## McMILLEN *vs.* THE STATE OF MISSOURI.

1. Where several persons are jointly indicted for murder, upon a separate trial of one, a witness may testify as to the unfriendly state of feelings at and before the time of committing the offence, between the deceased and those not upon trial for the purpose of proving malice and a general conspiracy by all.

2. Where the objection to evidence is irrelevancy to the issue, the supreme court cannot settle the point unless all the evidence in the cause is preserved in the bill of exceptions.

3. The question whether an accomplice may be a witness for others joined in the same indictment with himself provided he be not put upon his trial with the others discussed.

4. Upon a trial for murder the declarations of the deceased are not admissible in evidence unless they constitute a part of the *res gestae* or are made *in articulo mortis*.

ERROR TO COOPER CIRCUIT COURT.

LEONARD & HAYDEN for plaintiff.

1. We object to the testimony of John Logsdon given in behalf of the State, that he knew there were unfriendly feelings existing between Jackson Logsdon and the other three defen-dants.

2. To the testimony of John Logsdon proving a first fight between himself and John Mc-Millen, one of the defendants.

3. To the exclusion of testimony proposed to be given by the defendant, through John Mc-Millen, that there were no unfriendly feelings on the part of the witness, (one of the defend-ants) to Jackson Logsdon.

4. To the exclusion of the testimony proposed to be given by the defendant, through Mrs. McMillen, that she heard Jackson Logsdon threaten to shoot John McMillen.

5. To the exclusion of the evidence proposed by the defendant to be given through John Prewitt of a transaction going to show that Jackson had a pistol for the purpose of, confirm-ing defendants' witnesses, to prove that he was armed with a pistol in the affray, and discredit-ing the State's witnesses who deny that fact.

6. To the court's refusal of the defendant's two last instructions, being the eighth and ninth.

7. To the court's refusing a new trial on account of the newly discovered evidence, and for the other reasons assigned in his motion therefor.

ROBARDS, Attorney General, for the State.

The first point in the cause is, whether the court erred in admitting the evidence of John Logsdon, a witness, that there were unfriendly feelings existing between the deceased, Jackson Logsdon and the three defendants not upon their trial. This evidence was given as a circum-stance to assist in establishing a previous conspiracy entered into by all the four McMillens, and for this purpose it was legal. But upon a failure to give sufficient evidence to prove a conspiracy, this was not before the jury in considering their verdict. This court will not re-verse the judgment on account of the admission of the above evidence, because it is manifest to the court that it could have operated no injustice against the defendant. 12 Wendell 41, 3 Johnson's Rep. 532, 2 Caine's Rep. 90; 5 Mo. Rep. 532, 6 Mo. Rep. 301, 7 Mo. Rep. 419; 8 Mo. Rep. 227; 9 Mo. Rep. 166; 10 Mo. Rep. 65.

2. No specific objection was made in the circuit court to the admission of this evidence and this court will not decide upon it. 8 Mo. Rep. 431; 6 Mo. Rep. 186; 7 Mo. Rep. 316; 4 Mo. Rep. 540; 19 Wend. Rep. 562.

3. The court properly rejected the evidence proposed to be given by John McMillen, a wit-ness, viz: "That he had no unfriendly feeling towards the deceased previous to his death," be-cause it did not tend either directly or indirectly to prove or disprove any part of the issue or any material part of the cause.

4. As to the facts set forth in the affidavit of the defendant, upon the motion for a new trial, they are not admissible for two reasons:

*First*, They are heresay declarations. Roscoe Crim. Ev. 20; 7 John. Rep. 95, 15 John. Rep. 230; 7 Humphrey Tenn. Rep. 543.

*Second*, If admissible at all, these facts are only cumulative and are no good grounds for granting a new trial. 12 Mo. Rep. 57.

NAPTON J. delivered the opinion of the court.

Aaron McMillen and his three sons, John, James and Michael, were jointly indicted for the murder of Jackson Logsdon. They were tried

separately. The appellant, Aaron McMillen, was found not guilty of murder as charged in the indictment, but guilty of manslaughter in the third degree, and sentenced to imprisonment in the penitentiary for three years.

All the testimony given on the trial is not preserved in the bill of exceptions, but enough is stated to show the important facts in the case. The tendency of the evidence on the part of the State, which came mainly from the brother of the deceased and a young man named Casey who was associated with the Logsdons, was to establish a preconcerted attack by the four McMillens upon Jackson Logsdon, when he was alone and without arms. It appeared from this testimony, that after the commencement of the affray, the two witnesses above mentioned came to the assistance of the deceased, and that in the rencountre which ensued Jackson Logsdon was killed, his skull being badly fractured and his body shot through with a pistol ball. These two witnesses were the only persons present at the killing; one of them, John Logsdon, the brother of Jackson having a loaded rifle which he brought with him, upon hearing the quarrel, and the other two without weapons. All the McMillens were armed, two with fire arms (a gun and a pistol) and the other two with clubs. The witness, John Logsdon, snapped his pistol at one of the McMillens, as they advanced towards the Logsdons, and before his brother Jackson was killed.

The defence rested almost entirely upon the evidence of the three McMillens, who were not upon trial; and the wife of the one who admitted himself to have shot the deceased. Their testimony tended to show that the Logsdons had sought the rencountre and that only two of their party were present at the commencement of the attack; and that these two were pursuing their usual vocations, the one having started on horseback on his way to carry the mail, and the other accompanying him on foot for the purpose of feeding some stock at a field cultivated by the family at some distance from the house. These two witnesses and co-defendants were attacked by the Logsdons, and according to their statements, Jackson Logsdon was armed with a pistol and his brother with a rifle. John McMillen shot Jackson Logsdon, after he, Jackson, had presented a pistol at his breast, and Casey, the friend of the Logsdons, broke the skull of the deceased by a blow of his gun aimed at one of the McMillens. There was no testimony apart from the statements of these witnesses, that Jackson Logsdon had any pistol or other weapon.

It is unnecessary to notice the evidence more minutely, as the only errors assigned, consist of the admission or exclusion of certain evi-

dence offered on the trial. We have stated sufficient to show its general tendency on both sides.

1. John Logsdon the principal witness for the State, testified, that there were unfriendly feelings between the defendant, Aaron McMillen and his brother, Jackson Logsdon; and he further testified that there were unfriendly feelings between the other defendants and Jackson Logsdon, his brother. This evidence was objected to, but was admitted and an exception taken.

As the tendency and object of this evidence was to establish malice on the part of the defendant and a participation in this feeling by all the co-defendants, it is difficult to see any objection to its introduction. The point however, is not urged, and we will therefore pass to the second exception.

2. The witness, John Logsdon, previous to the close of the evidence on the part of the State, was recalled and stated that four or five days before the affray, he and John McMillen had a fist fight. This was objected to.

It will be observed that all the evidence is not preserved in the bill of exceptions. The only objection which could be urged to this testimony, would be its irrelevancy, but it is impossible for this court to see, from the record, whether this objection existed or not. Standing as it does in the bill of exceptions, isolated and disconnected with what preceded and succeeded it, its materiality is not very manifest. The fact testified to, may have been important, in two points of view, first, for the purpose of corroborating the testimony previously given, in relation to the state of feeling between these two families, and secondly, with a view to elucidate some other fact already testified to in the case, and not now appearing upon the bill of exceptions.

3. Upon the examination of John McMillen, one of the co-defendants, the defendant proposed to prove by this witness that he (the witness) had no bad feeling for Jackson Logsdon previous to the affray. This testimony was objected to, and the question was not allowed to be answered.

In this case, it will be seen that all the co-defendants, who were not upon trial, were permitted to testify without objection. This was so held in Garnett and others vs. the State (6 Mo. Rep. 1.) That decision was based upon a passage in Starkie. (2 Stark. 22) and the passage in Starkie, upon an observation of Lord Hall, "that the witness is never indicted, because that weakens and disparages his testimony, but *possibly* does not take away his testimony." The opinion of Starkie seems to be without authority and is indeed accompanied with a *quere* in his own

notes. Professor Greenleaf also says : "it makes no difference as to the admissibility of an accomplice, whether he is indicted or not, if he has not been put upon his trial at the same time with his companions in crime, he is also a competent witness in their favor." For this no authority is cited and in a previous passage, the same author has said; "In regard to defendants in criminal cases, if the State would call one of them as a witness against others in the same indictment, this can be done only, by discharging him from the record, as by the entry of a *nolle prosequi*, or by an order for his discharge or dismissal, where he has pleaded in abatement as to his own person and the plea is not answered; or by a verdict of acquittal where no evidence or not sufficient evidence is adduced against him." The general current of authorities, both in England and in this country, is unquestionably, that where several persons are jointly indicted, one is not a competent witness for the others, without first being acquitted or convicted, and it makes no difference whether they plead jointly or separately: Upon an examination of the subject, somewhat hastily, I have found no authority to the contrary. 1 Phil. Ev. Text 74 ; 5 Rex vs. Rouland ; Ry & Moo, 401 (21 Eng. C. L 471) 2 Dev. 420, 1 Yergee 431 ; 5 Esp. Ni. P. R. 140, Rex vs. Lafond. In New York where they have a statutory provision exactly like ours, authorizing a co-defendant, in every indictment for a felony, to offer from his accomplices and have a separate trial, it has been held, that the rules of evidence were not altered by that act. 29 Wend. 377.

No question was however made in this case, as to the general competency of the witness ; the subject is alluded to merely to show the unfavorable and doubtful position that such a witness must occupy at best. The question propounded to John McMillen, was whether he, (the witness) entertained unfriendly feelings towards Jackson Logsdon, previous to the affray in which he was killed. The witness was the defendant, who, according to his own statement shot Jackson Logsdon. It is obvious that the question could only be answered in one way. He was not bound to criminate himself and an affirmative answer must have inevitably had that effect. The question was propounded by the counsel of his co-defendant, his accomplice in crime, if any was committed, what weight could such an answer be entitled to under such circumstances? We are aware that the worthlessness of the testimony, is not a sufficient reason for rejecting it, and that it is the province of the jury to decide upon the weight of testimony, but this circumstance among others, tends to show, that no purpose of advancing justice is to be subserved by the reversal of a judgment upon such a ground as this.

The only plausible ground for the introduction of such evidence as this, is the fact that John Logsdon, the witness for the prosecution, had previously testified that there were unfriendly feelings between his brother and the McMillens generally, and the defendant had a right to contradict the witness, and the proposed testimony of John McMillen had that tendency. The bill of exceptions shows, that upon a cross examination of John Logsdon, in relation to this point, he stated that he was examined before the committing magistrate and there testified, that he did not know of any bad feelings on the part of the defendant towards Jackson Logsdon, and further that he did not then (upon the then trial) know of any, but that he did know of bad feelings on the part of his brother Jackson towards the defendant. This explanation would seem to show, that there was very little, if any thing, left in the testimony of Logsdon on the subject which the defendant could desire to contradict. He admits, that so far as the defendant was concerned, his opinion of the bad feeling, he supposed to be entertained by him towards his brother, was rather an inference from his knowledge of the ill will which he candidly admits his brother and probably himself entertained for the defendant. So far as the defendant's case was concerned, there was nothing in Jackson Logsdon's testimony which a negative response to the rejected question of his father's counsel, could possibly contradict, and the only additional object to be attained by such an answer, was the possible effect it might have had in disproving the conspiracy and malice so far as the co-defendants were concerned.

In addition to the exceeding worthlessness of such evidence, coming from such a quarter and under such circumstances, and in addition to the fact that the portion of John Logsdon's testimony at which this proposed evidence was aimed had been so materially modified as to leave no grounds for disputing it on the part of the defence; the jury have acquitted the defendant of murder and thereby negatived the charge of malice and premeditation which all this testimony was designed to establish or refute. To what purpose then shall this judgment be reversed, had an error been committed on this point? The testimony was offered on the point of malice. It was designed to affect that question directly or indirectly, and the verdict of the jury has negatived its existence, and is so far in favor of the defendant.

4. Upon the examination of Ruth McMillen, the wife of John McMillen, one of the co-defendants, the defendant proposed to prove by her, that she had heard Jackson Logsdon, recently, before the affray, threaten to shoot her husband. This testimony was rejected. As Jackson Logsdon was not a party to the prosecution, what he said is no more

than the hearsay of any other man, and was therefore upon general principles inadmissible. Had his declaration been *in articulo mortis* or a part of the *res gestae*, they would have come within the exceptions to the general rule. The bill of exceptions does not show *when* the declarations were made. *Recently* is a word of indefinite character.

5. The defendant called a witness named Prewitt, who testified, that he saw John and Jackson Logsdon together on their way to Mr. Berry's the father-in-law of John Logsdon, about the month of September 1847, and then proposed to prove, that about this time, John and Jackson Logsdon were at Marshall in Saline county; that John was there for the purpose of obtaining from the county court a habeas corpus to get possession of his child, then in possession of his wife, who had left him and gone to her fathers, Mr. Berry; that the court not convening, John and Jackson Logsdon returned towards Berry's, John declaring with an oath, that he knew how he could get his child; that witness and others then immediately mounted their horses for the purpose of resisting the taking of the child by force, and followed after them; that as they came up, a pistol was seen in John Logsdon's bosom, and as they attempted to pass Jackson Logsdon, the latter put his hand to his bosom, under his vest, as a man would in attempting to grasp his pistol and holding his hand there, declared if any one attempted to pass him, they were dead men. This evidence was objected to, and the court excluded it.

It is sufficient to say, that this evidence was totally irrelevant and had not the remotest tendency to elucidate any portion of the matter then before the jury.

Judge RYLAND concurring, the judgment of the circuit court is affirmed.