The State v. Chyo Chiagk.

THE STATE v. CHYO CHIAGK, *Appellant.*

1. **Criminal Practice:** EVIDENCE OF CO-DEFENDANTS. Under section 1917, Revised Statutes, a defendant, jointly indicted with others, but not put upon his trial, cannot testify on behalf of the state against his co-defendants.

2. ——— : ———. Under section 1918, Revised Statutes, co-defendants, jointly indicted with the defendant, but not put upon their trial, are competent witnesses to testify in his behalf.

3. ——— : INDICTMENT : WRONGFULNESS OF ARREST. The wrongfulness of the arrest of the defendant, or the wrongfulness of his detention afterwards, cannot, in any wise, impair or affect the validity of the indictment subsequently found against him.

4. ——— : INTERPRETER, OATH OF : STATUTE. Under sections 3324-5, Revised Statutes, as well as at common law, it is error for the trial

court to refuse a defendant an opportunity to show, before an interpreter entered upon his duties, that the oath administered was not binding on the interpreter's conscience, and that there was a form of oath, according to the forms of his religion, which he did regard as binding.

5. ———— : ————. A like opportunity should be afforded to show that the interpreter was incompetent, and not impartial.

6. ———— : EVIDENCE OF ACCOMPLICE : INSTRUCTION. An instruction in regard to the testimony of an accomplice is faulty which fails to explain to the jury what is meant by the words, "matters material to the issue," where the jury were told that, as to such matters, there must be corroboration.

7. ———— : ———— : ————. The instruction is also defective in failing to tell the jury that the corroboration of the testimony of the accomplice should go so far as to identify the person of the prisoner against whom the accomplice testified.

*Appeal from St. Louis Criminal Court.*—HON. G. S. VAN WAGONER, Judge.

REVERSED AND REMANDED.

*Martin & Fauntleroy* and *Henry D. Laughlin* for appellant.

(1) The appellant was arrested by a police officer, without warrant or other process, and confined in the calaboose for over twenty hours without being charged with any offence, by the oath of a credible person, and was entitled to be restored to his liberty, under section 1490, Revised Statutes, and the motion to quash the indictment and discharge him should have been sustained. *State v. Stern,* 4 Mo. App. 385; *Hopt v. Utah,* 110 U. S. 574; Const. of U. S. 14th amend. ; Const. of Mo., Bill of Rights, sec. 30. (2) The court erred in refusing appellant's motion for a special jury. His right thereto was fixed by the law in force when the alleged offence was committed. R. S., sec. 2802; *State v. Kring,* 17 Otto, 221; *State v. Perry,* 25 Mo. 355. (3) The court committed error in refusing to permit the interpreter to be

sworn according to the laws of China, and refusing to permit appellant to show that said interpreter was an interested party, and not qualified to act as such. (4) It was error for the court to permit Cong Seng, jointly indicted with appellant, to testify against him, without first discharging him from the indictment. He was incompetent at common law, and our statute required him to be first discharged before he could testify against his co-defendant. R. S. 1879, sec. 1917; *State v. Bruner*, 65 N. C. 499; *Lindsay v. People*, 63 N. Y. 143; *State v. Clump*, 16 Mo. 385; 1 Greenl. Evid. [Redfield's Ed.] sec. 363; 1 Bishop Crim. Proc. [3 Ed.] sec. 1166; *State v. O'Connor*, 65 Mo. 374. (5) The court erred in excluding, as witnesses for the defence, Hock Siagk and the other co-defendants offered by the defence. Though jointly indicted, yet, the trial being separate, they were competent witnesses for their co-defendant. The statute (R. S. 1879, sec. 1918) removes the common-law disability by reason of interest; and, under this section, a defendant is made a competent witness for his co-defendant, even upon a joint trial, and *a fortiori* is this the law where the trials are separate. Especially, as Mr. Bishop, of counsel for the state, had used some of these defendants as witnesses against the accused, by asking them their names in the presence and hearing of the jury, thus supplementing the evidence of the witness on the stand with the evidence of defendants. The prosecution having thus examined one of these defendants against the accused, it was competent for the defendant to cross-examine him. *State v. Brady*, 87 Mo. 142. If this be not so, then it should be held to have been error for Mr. Bishop to thus examine this defendant. *State v. Brier*, 32 N. J. L. 414; *People v. Labra*, 5 Cal. 183; *Armistead v. State*, 18 Ga. 704; 3 Russell on Crimes, 625-6; *State v. Morrow*, 14 Lea [Tenn.]; *Poteet v. State*, Baxter [Tenn.] 261; 15 Cox Crim. Cas. 217; Wharton's Crim. Evid., sec. 445. (6) The seventh instruction, to

the effect that the testimony of an accomplice ought to be corroborated by the testimony of some other person, as to matters material to the issue, is erroneous, in that it does not go far enough; the corroboration should not be merely as to matters material to the issue, but as to matters material to the issue and tending to show the accused's connection with the crime. The accomplice's testimony may be corroborated as to many matters material, and absolutely essential, to the issue, and yet there may be not one particle of corroboration as to any matter showing the guilt of the accused. Thus, for instance, the killing of deceased by some one is most material to the issue, but it can hardly be supposed that corroboration as to that would give any additional weight, or value, to the accomplice's testimony implicating the accused in the killing. 3 Russell on Crimes [9 Ed.] 602-3-4, and cases there cited; Roscoe's Crim. Evid. [7 Ed.] 129-30; 1 Bishop Crim. Proc. [3 Ed.] sec. 1170. And, moreover, this instruction is erroneous in authorizing the jury to convict on the testimony of the accomplice, if "fully satisfied of its truth." This instruction, it must be observed, undertakes to cover the whole measure of the juror's duty, and to tell him when, and upon what measure of proof, he should convict. Upon the whole case, he is told to convict if, and only if, he be convinced of guilt beyond all reasonable doubt, that is to a moral certainty, and now he is told to convict upon one particular and specified part of the testimony, if "fully satisfied of its truth." (7) The motion for a new trial should have been sustained on the grounds above set out, but we claim, in addition, that it should have been sustained, because the evidence did not warrant a conviction. It was so insufficient, and of such a character, that we feel justified in asking this court to interfere on this ground *in favore vitae*. We understand that this court will not, as a rule, reverse on account of any mere weight of evidence, but our posi-

tion is, that a consideration of the evidence in this case will lead this court to conclude that the conviction in this case is unjust, and ought not to be suffered to stand. The following are all cases where this court has gone out of the general rule and reversed the finding of the jury, on the sole ground that the evidence did not warrant a conviction. "Whilst the law is firmly established in this state that it is not the province of this court, in civil cases, to weigh the evidence, or disturb the discretion of the lower courts, in maintaining or setting aside verdicts, it is equally well settled that, in criminal cases, we have never abandoned our right to interfere where the record shows that manifest injustice has been committed, or the verdict is not supported by the evidence. We will not say here that the verdict is wholly unsustained by the evidence, but the testimony is certainly very weak on which to base a conviction." *State v. Mansfield*, 41 Mo. 470; *State v. Marshall*, 47 Mo. 378; *State v. Bird*, 1 Mo. 585; *Fanny v. State*, 6 Mo. 122; *State v. Gresser*, 19 Mo. 247; *State v. Packwood*, 26 Mo. 340; *State v. Burgdorf*, 53 Mo. 65; *State v. Daubert*, 42 Mo. 238; *State v. Brosius*, 39 Mo. 534; *State v. Jaeger*, 66 Mo. 173. And this court has recently gone so far as to reverse a judgment, even in a civil case, upon the *improbability* of the evidence. *Spohn v. Railroad*, 87 Mo. 74. (8) The motion in arrest of judgment was improperly overruled.

*B. G. Boone*, Attorney General, *A. C. Clover* and *C. O. Bishop* for the state.

(1) The motion to quash the indictment and proceedings, on the ground that the prisoner had been illegally held prior to indictment and had no preliminary examination, was properly overruled. He was not entitled, as a matter of right, either under the constitution or by statute, to a preliminary examination before indictment.

1 Bish. Crim. Proc. [3 Ed.] sec. 239a. Section 1490, Revised Statutes, did not entitle him to a release after indictment found. It was then too late to complain. The indictment being good in form and substance, it could not be affected by an illegal arrest or restraint before it was found. Wharton's Crim. Plead. [8 Ed.] sec. 27, and cas. cit. (2) The court committed no error in denying appellant's motion for a special jury. The statute which gives the court the power to order a special *venire* does not invest the prisoner with the right to demand one. Sess. Acts, 1885, p. 74. It was a matter resting in the sound discretion of the court, and the exercise of that discretion must be affirmatively shown to have prejudiced the prisoner before this court can reverse a judgment therefor. (3) The court did not err in permitting Wong Chin Foo to act as interpreter in the cause, in translating the indictment to the accused and the testimony of the Chinese witnesses. His examination in the *voir dire* showed conclusively his good understanding of the English language, and of the Chinese, as well as could be determined, his disinterestedness in the event, and his proper appreciation of the solemnity of the statutory oath. The court would have had a right to appoint him interpreter of its own motion. R. S., sec. 1039. (4) The court committed no error in permitting the Chinese witnesses, on behalf of the state, to be sworn according to the statutory form, they having been examined on their *voir dire* by the court, and having stated that there was no oath to them of more solemn and binding obligation. R. S., sec. 3324; Const., art. 2, sec. 5. (5) There was no error in refusing to permit co-defendants not on trial to testify on behalf of the accused. They were clearly incompetent, never having been tried and the indictment still pending against them. *State v. McMillan*, 13 Mo. 30; *State v. Roberts*, 15 Mo. 29; *State v. Martin*, 74 Mo. 547. (6) The court committed no error in permitting the co-defendant, Cong

Seng, over objection of appellant, to be sworn and to testify for the state, there having been a severance. Wharton's Crim. Evid. [9 Ed] sec. 439. And the statute (R. S., sec. 1917), does not change the common-law rule. The jury were carefully instructed by the court as to the caution with which they should receive this testimony. (7) The jury were correctly instructed on all questions of law arising in the case. (8) The motion in arrest was properly overruled. The grand jury was legally in operation and fully authorized to find the indictment. R. S., secs. 1789, 2780; *State v. Harris*, 73 Mo. 287.

SHERWOOD, J.—By a special grand jury at the May term, 1885, of the St. Louis criminal court, the defendant was indicted jointly with Chyo Pock, Hock Siagk, Cong Seng, Chyo Goom, You Sing, and Pock Sig, all Chinamen, for the murder of Lou Johnson, also a Chinaman, in the city of St. Louis, on June 1, 1885. The defendant obtained a severance, and being separately tried, was convicted at the January term, 1886, of murder in the first degree, and sentenced accordingly. The indictment contained three counts, all charging the same offence: (1) That Chyo Pock, Chyo Chiagk, Hock Siagk, and Cong Seng, stabbed and killed deceased with knives. (2) That Chyo Pock and Chyo Chiagk stabbed and killed deceased, Hock Siagk and Cong Seng being present, aiding and abetting, and (3) that Chyo Chiagk (appellant), stabbed and killed deceased, Chyo Pock, Hock Siagk, and Cong Seng, being present, aiding and abetting in the killing.

In each and all of these counts the defendants, Chyo Goom, You Sing, and Pock Sig, were charged as accessories before the fact.

I. Was error committed in permitting Cong Seng, jointly indicted with defendant and others, but not put

upon his trial, to testify on behalf of the state, and against the defendant? Was error committed in refusing to permit the co-defendants of the defendant, jointly indicted with him, but not put on trial, to testify in his behalf? Of these questions, in their order, as to the first: In the endeavor to ascertain the present *status* of the law in this state, as involved in this question, it is necessary to give a summary of what has been heretofore decided by this court, as well as to quote from the text writers, and to set forth certain statutory provisions bearing on the point in hand.

Bishop says: "One of two or more joint defendants cannot be a witness for or against another, even on a separate trial, until the case as to himself is disposed of, by a plea of guilty, or a verdict of conviction or acquittal, or a discharge on a plea in abatement; then he may be. Sentence need not be rendered. Of course, if the indictments are separate, he may be a witness, though the offence is supposed to be joint." 1 Bish. Crim. Proc., sec. 1020, and cas. cit. "According to Lord Hale, it was the usage in his time not to indict one who was to be a witness, because this would disparage his testimony. But, in our day, no good reason appears for attempting to veil from a jury the real facts, with a gauze so transparent. Hence, with us, one of the methods is for the prosecuting officer to require the accomplice to submit to be indicted with the rest. Whereupon, the law is, that a joint defendant cannot be a witness for or against the others, even on a separate trial, till the case is disposed of as to him, by a conviction or acquittal, or by a *nolle prosequi*. But judgment on the conviction need not be rendered ; therefore, the defendant, who is to testify, pleads guilty, and then testifies. If his testimony entitles him to be discharged, there is a *nolle prosequi*, or other appropriate proceeding ; or if not, the court has only to render sentence on the plea of guilty." *Ib.*, sec. 1166, and cas. cit.

In Best's Principles of Evidence, by Chamberlayne, page 180, it is said: "Except as above stated, the incompetency of accused parties to give formal evidence in criminal proceedings, still subsists; nor even can parties jointly indicted be called as witnesses for or against themselves, or against each other."

Another author says: "But as in civil actions against several defendants, a co-defendant may sometimes be so circumstanced as to be a competent witness; so in criminal prosecutions, one of several persons jointly indicted may be rendered competent to give evidence, either for the prosecution or for his co-defendants. Thus, upon an information by the crown against two or more, if a *nolle prosequi* be entered by the attorney general, either before or at the trial, as to one of the defendants, such defendant may be called as a witness for the crown against his co-defendant. So, where, upon a joint indictment against two, one had pleaded in abatement, and for want of replication, judgment had been entered that he should be dismissed and discharged, he was admitted, without objection, as a competent witness for the other defendant, being himself no longer interested in the event of the prosecution." 1 Phil. Evid. [4 Ed.] p. 64. "It has been held, in a recent case, that a prisoner, who has pleaded guilty to an indictment, is a competent witness against other defendants joined in the same indictment. It was contended in this case that the defendant was not admissible as a witness against two other prisoners included in the same indictment, because he was a party to the record; but Alderson, B., observed that he was not a party to the issues; the only issues being whether the two other prisoners were guilty or not." *Ib.*, p. 65.

Greenleaf says: "In regard to defendants in criminal cases, if the state would call one of them as a witness against others in the same indictment, this can be done only by discharging him from the record, as by the

entry of a *nolle prosequi*, or by an order for his dismissal and discharge, where he has pleaded in abatement as to his own person, and the plea is not answered ; or by a verdict of acquittal, where no evidence, or not sufficient evidence, has been adduced against him.   In the former case, where there is no proof, he is entitled to the verdict ; and it may also be rendered at the request of the other defendants, who may then call him as a witness for themselves, as in civil cases.   In the latter, where there is some evidence against him, but it is deemed insufficient, a separate verdict of acquittal may be entered, at the instance of the prosecuting officer, who may then call him as a witness against the others.   On the same principle, where two were indicted for an assault, and one submitted and was fined, and paid the fine, and the other pleaded 'not guilty,' the former was admitted as a competent witness for the latter, because, as to the witness, the matter was at an end.   But the matter is not considered as at an end, so as to render one defendant a competent witness for another, by anything short of a final judgment, or a plea of guilty.   Therefore, where two were jointly indicted for uttering a forged note, and the trial of one of them was postponed, it was held, that he could not be called as a witness for the other.   So, where two, being jointly indicted for an assault, pleaded separately, 'not guilty,' and elected to be tried separately, it was held, that the one tried first could not call the other as a witness for him."   1 Greenl. Evid., sec. 363.

Elsewhere, the same author states :  "The usual course is to leave out of the indictment those who are to be called as witnesses ; but it makes no difference as to the admissibility of an accomplice, whether he is indicted or not, if he has not been put on his trial at the same time with his companions in crime.   He is also a competent witness in their favor ; and if he is put on his trial at the same time with them, and there is only very slight

evidence, if any at all, against him, the court may, as we have already seen, and generally will, forthwith direct a separate verdict as to him, and upon his acquittal, will admit him as a witness for the others. If he is convicted, and the punishment is by fine only, he will be admitted for the others, if he has paid the fine." 1 Greenl. Evid., sec. 379.

Wharton says: "An accomplice is a competent witness for the prosecution, although his expectation of pardon depends upon the defendant's conviction, and although he is a co-defendant, provided, in the latter case, his trial is severed from that of the defendant against whom he is offered." Wharton on Crim. Evid. [9 Ed.] sec. 439. In another place he says: "At common law, an accomplice, not a co-defendant, is always a competent witness for the defendant on trial; but when indicted jointly with the defendant on trial, although he has pleaded and defended separately, he is not, at common law, a competent witness for his co-defendants, unless immediately acquitted by a jury, or a *nolle prosequi* be entered; and the same rule applies to accessories. Whether the trial be joint or several, the rule is said to be the same." *Ibid*, sec. 445.

I will now briefly examine our own decisions: In *Garrett v. State*, 6 Mo. 1, it was ruled that an accomplice jointly indicted with others, who is not put on his trial with them, may be a witness for them. In *McMillen v. State*, 13 Mo. 30, this view of the admissibility of a witness under such circumstances was disapproved, though no ruling was made. In *Fitzgerald v. State*, 14 Mo. 413, where several were jointly indicted, it was ruled that it was discretionary with the trial judge whether a severance should be allowed the defendants. All were then put upon their trial, and it was then asked that the jury be permitted to pass on the case of Ward, so that he might be used as a witness for his co-defendants. This request was also refused, and the result was

that Ward was acquitted, and the other defendants convicted. And the second ruling was also approved by this court.

This case was followed, in 1851, by that of *State v. Roberts*, 15 Mo. 28, where quite an extensive discussion of the point decided in *Garrett v. State, supra,* was had, and the conclusion reached, after an examination of the authorities, was, that where two defendants are jointly indicted, neither is admissible as a witness for his co-defendant, no matter whether they be jointly or separately tried. On this point, Scott, J., dissented. In 1852, it was ruled to be the proper practice for the state to enter a *nolle prosequi,* in order to render one defendant a competent witness against his co-defendant. *State v. Clump,* 16 Mo. 385. In 1854, the ruling made that jointly-indicted parties cannot be witnesses for each other, whether jointly or severally tried, was again announced. *State v. Edwards,* 19 Mo. 674. In 1855, the legislature enacted the following section: "When two or more persons shall be jointly indicted, the court may, at any time before the defendants have gone into their defence, direct any defendant to be discharged, that he may be a witness for the state. A defendant shall, also, when there is not sufficient evidence to put him on his defence, at any time before the evidence is closed, be discharged by the court, for the purpose of giving testimony for a co-defendant. The order of discharge shall be a bar to another prosecution for the same offence." 2 R. S., 1855, p. 1193, sec. 25. The section just quoted is now section 1917, Revised Statutes, 1879.

This section, coming on the heels of so much discussion of the point already mentioned, may, doubtless, be regarded as a legislative regulation of the practice to be pursued, where either the state or a co-defendant desires to use, as a witness, a co-defendant jointly indicted ; and, in view of the authorities cited, and the

conflict they show, the section may be deemed declaratory of what was thought to be the correct rule at common law. So that, whether we follow the rule as announced, at common law, by eminent authors and judges, as already seen, or whether we pursue the statutory rule, the result will be to announce that Cong Seng, in the circumstances mentioned, was inadmissible as a witness against his co-defendant.

The second question propounded is to be considered in connection with another statutory provision, but for the existence of which it is clear that the co-defendants of the defendant on trial would not have been admissible as witnesses in his behalf. Section 1918, Revised Statutes, 1879, so far as necessary to quote, is as follows : "No person shall be incompetent to testify as a witness, in any criminal cause or prosecution, by reason of being the person on trial or examination ; * * * provided, that no person, on trial or examination, * * * shall be required to testify ; but any such person may, at the option of the defendant, testify in his behalf, or on behalf of a co-defendant." I do not find that this section has ever received construction, or to have been even so much as alluded to, in the course of judicial investigation. The case of *State v. Martin*, 74 Mo. 547, decided in 1881, cited by the attorney general, makes no allusion to this section, but adheres to the rule announced in *State v. Roberts, supra*, declaring that such rule is recognized in the section already discussed.

Now, to the section under discussion : Taking this section in its literal acceptation, it must be confessed that it only applies to "the person on trial or examination." "Such a person," *i. e.*, "on trial or examination," "may, at the option of the defendant, testify in his behalf, or on behalf of a co-defendant." Taken as it *reads*, this section would not only bear the meaning just attributed to it, but would allow a defendant, "on trial or examination," to decide whether his *co-defendant*

should testify in his behalf or not, which the legislature evidently did not mean. If the legislature, just after the words, "required to testify," had simply said, "but the defendant, himself, may testify in his behalf, or on behalf of a co-defendant," there would not have been such ambiguity as that last mentioned. But, coming to the precise point, it is evident, from what has been said, that the section was very slackly drawn. At the common law, the central idea was to prohibit a *party to the record* from testifying. *People v. Bill*, 10 Johns. *95. That prohibition no longer prevails; on the contrary, the controlling principle of the section under discussion is to remove the ancient landmarks of evidence, and to make it entirely optional whether a defendant, in any given criminal case, shall bear witness for himself, or for his fellows. Bearing this in mind, it is altogether inconceivable that the legislature intended that a defendant might testify in his own behalf, and on behalf of those *tried with him*, and yet be denied the privilege of testifying for his co-defendant, or of having the latter testify for him, when their trials are *separate*. Such a construction would be an absurdity, contrary to reason, and which could not be attributed to a man in his right senses. *State v. Hayes*, 81 Mo. 585.

On the other hand, if a different construction be given that section, such a construction accords well with its evident fundamental purpose, that of being a *remedial* section, giving a testifying capacity where none existed before, therefore, to be construed liberally; to receive an equitable interpretation which will enlarge the letter of the act, so as more effectually to meet the beneficial end in view, and prevent a failure of the remedy. 1 Kent's Com. 465; Smith's Com., secs. 520, 547. In such cases, the reason of the law prevails over its letter, and general terms are so limited in their application as not to lead to injustice, oppression, or an absurd consequence, the presumption being indulged that the leg-

islature intended no such anomalous results. *United States v. Kirby*, 7 Wall. 482; *People ex rel. v. McRoberts*, 62 Ill. 38; *St. L. & S. F. Ry. Co. v. Evans*, 85 Mo. 329. Viewing the matter in this light, it is ruled that error occurred in the refusal to permit the co-defendants of the defendant to testify in his behalf, notwithstanding the fact that they were not tried with him.

II. These errors are such as must needs accomplish a reversal of the judgment; and, since this is so, it is not thought necessary to go into any extended examination of this voluminous record, and of the many other errors which have also been assigned, because the errors already mentioned, being corrected on a new trial, will make such important changes in the presentation and aspect of the cause as will probably render any observations now made of but little worth. But passing to a few points which are deemed proper to be briefly considered before closing:

III. However it may be in other jurisdictions, in this state the wrongfulness of the arrest of the defendant, or the wrongfulness of his detention after arrest, cannot affect, or in anywise impair, the validity of the indictment afterward found against him. 1 Bishop Crim. Proc., sec. 239*a*. No constitutional right of the defendant was invaded; he was proceeded against by indictment, in strict conformity to section 12, of our Bill of Rights, and the validity of that indictment could only be tested by proceedings immediately connected therewith, and not by unwarranted antecedent occurrences. The motion to quash was, therefore, properly overruled. This is enough to say on the point.

IV. This cause was tried below in peculiar circumstances, and under peculiar difficulties. The defendant was sworn, and testified through the medium of an interpreter. He was a stranger in a strange land. He was put on trial for his life before a court; "its records were kept in unknown characters, its sentences were pro-

nounced in unknown sounds." If, in ordinary circumstances, where one is arraigned and placed on trial, the alternative being his life or death, the situation is embarrassing, though he be one of our own people, conversant with our language, our customs, our institutions, and our laws, what must be the hapless state of one who, lacking all such immense advantages, is compelled to undergo a similar dread ordeal ; to testify to his innocence and his *alibi* by *substitution ;* to see as through a glass, darkly ; and to hear without perceiving what, to him, are matters of most momentous interest ? In circumstances such as these, this cause was tried. Placed in such a situation, the defendant had peculiar claims to protection ; he was, in some sense, the ward of the court, and, if ever the humane maxim of the common law should apply, that the court is counsel for the prisoner, it ought to apply in instances like the present. Our statute provides : "Whenever the court, or officer by whom any person is about to be sworn, shall be satisfied that such person has any peculiar mode of swearing, connected with, or in addition to, the usual form of administering oaths, which is, to him, of more solemn and binding obligation, the court, or officer, shall adopt that mode which shall appear to be most binding on the conscience of the person to be sworn." Section 3324. And it is further provided that : "Every person believing in any other than the Christian religion shall be sworn according to the peculiar ceremonies of his religion, if there be any such ceremonies." Sec. 3325. This was the rule at common law. Whart, Crim. Evid., sec. 354 ; 1 Greenl. Evid., sec. 371 ; 1 Phil. Evid. [4 Am. Ed. Cow. & H. Notes] 17, 18.

The statute just quoted is an emphatic declaration of the common-law rule. Against the objection of the defendant's counsel, the interpreter, Wong Chin Foo, was sworn in the ordinary way. They proposed to show, before he began his duties as interpreter, that the oath

administered was not binding on his conscience; that there was a form of oath which the witness did regard as binding, one according to the forms of his religion. He had said that he had always taken the Christian oath, because he believed in the Christian God, but he did not deny that he still retained the religion of his country, nor state that he regarded the form of oath taken as binding. Indeed, he stated that "the joshstick burning is the true oath among the Chinese; they take the josh-stick in their hand and swear to it."

Phillips says: "But, although a witness may not be questioned as to his particular religious opinions, he may be asked whether he considers the form of administering the oath to be such as will be binding on his conscience. The most correct and proper time for asking a witness whether the form of administering the oath is such as will be binding upon his conscience is previous to the administration of the oath. But it may occasionally happen that the oath is administered in the usual form, unobserved by the court or the counsel; the question, in such case, may properly be asked afterward." 1 Phillips on Evid. [4 Ed.] 20.

Owing to the great importance to the defendant, in his peculiar situation, of having every formula of the law strictly adhered to, I am of opinion that a reasonable opportunity should have been afforded counsel to establish the position they had taken. And the like opportunity ought to have been afforded them to show that the interpreter was incompetent, and that he was not impartial. It must be obvious that both these questions, the latter especially, are preliminary to an interpreter entering upon the discharge of his duties. The defendant was entitled to an interpreter at once capable and impartial; one who could and would be the medium and conduit of an accurate and colorless transmission of questions to, and answers from, the witnesses. All the precautions necessary to attain this end should have been

taken; for otherwise an interpreter might do the defendant incalculable mischief, mischief which no subsequent testimony could entirely eradicate from the minds of the jury. A similar objection to the form of oath administered to other Chinese witnesses was made and likewise overruled. There was error in all these rulings.

V. But for the testimony of Cong Seng, the accomplice, the defendant could not have been convicted; it was his testimony that fastened the crime upon him. Cong Seng, at about half past eight o'clock on the morning of the murder, was seen coming down the steps from Lou Johnson's house, having in one hand a satchel, and in the other a handkerchief up to his nose; there was blood on the handkerchief, blood on his fingers, and blood on the satchel. He turned, ran past the witness into the gangway leading into witness' house, went to the hydrant, washed his face and hands, wiped off the satchel, and then disappeared, going into the rear of a saloon on Seventh street. He was afterwards arrested on the third day of June, two miles south of Murphrysborough, Illinois, having with him a satchel, which, when opened, contained two revolvers and a dirk knife. Taking off his pants, the constable who arrested him found blood on his drawers, and a cut on one finger tied up with a rag. Cong Seng told this witness that Lou Johnson, a cousin of his, in St. Louis, owed him some money; that they were sleeping together in the same room, when a quarrel arose between them concerning this money and his cousin was about to shoot him, upon which he stabbed and killed him with a knife in self-defence. , He also told the officer that the long pistol belonged to the man he killed. Similar testimony as to the blood on the drawers, the satchel and its contents, the cut finger tied with a rag, was given by the marshal of Murphrysborough, John Fitzgerald, who also testified that, when they approached St. Louis, Daniel Mc-

Laughlin, the constable, remarked : " This is St. Louis." and Cong Seng replied, " I know it; over there I will die." Also, when asked by the officer who arrested him, "how many did this?" he said: "Nobody, you got the right man now."

The satchel and large pistol were proved to have been those of Lou Johnson ; in fact, Cong Seng admitted as much. These facts alone, aside from the testimony of Lena Lee, and aside from any confessions by Cong Seng, would have been amply sufficient to have convicted him of the crime charged. As to the defendant, so far as the act of killing was concerned, he established, by his own testimony as well as by that of Al Ngan and Al Bun, a clear *alibi*. The good character of the defendant was also established. The court, in regard to the testimony of Cong Seng, gave this instruction :

"The court instructs the jury that the testimony of an accomplice in the crime, that is, a person who aids, assists, encourages, and abets in the committing of the crime, is admissible ; yet the evidence of an accomplice in the crime, when not corroborated by the testimony of some person, or persons, not implicated in the crime, as to matters material to the issue, ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth before they should convict the defendant on such testimony."

Touching the testimony of an accomplice, Greenleaf observes : "The degree of credit which ought to be given to the testimony of an accomplice, is a matter exclusively within the province of the jury. It has sometimes been said, that they ought not to believe him, unless his testimony is corroborated by other evidence ; and, without doubt, great caution in weighing such testimony is dictated by prudence and good reason. But there is no such rule of law ; it being expressly conceded that the jury may, if they please, act upon the evidence of the accomplice, without any confirmation of

his statement. But, on the other hand, judges, in their discretion, will advise a jury not to convict of felony upon the testimony of an accomplice alone and without corroboration; and it is now so generally the practice to give them such advice, that its omission would be regarded as an omission of duty on the part of the judge." 1 Greenl. Evid., sec. 380.

In regard to these observations, Judge Henry, in *State v. Jones*, 64 Mo. 391, says: "It being the law, as Mr. Greenleaf in the above paragraph states, that one may be convicted of a felony on the uncorroborated testimony of an accomplice, makes it the more necessary that juries should be properly cautioned by the court in regard to such testimony."

Relative to the extent of corroboration necessary in order to convict, Greenleaf states: "But though it is thus the settled practice, in cases of felony, to require other evidence in corroboration of that of an accomplice, yet, in regard to the *manner and extent of the corroboration* to be required, learned judges are not perfectly agreed. Some have deemed it sufficient, if the witness is confirmed in any material part of the case; others have required confirmatory evidence as to the *corpus delicti* only; and others have thought it essential that there should be corroborating proof that the prisoner actually participated in the offence; and that, when several prisoners are to be tried confirmation is to be required as to all of them, before all can be safely convicted; the confirmation of the witness, as to the commission of the crime, being regarded as no confirmation at all, as respects the prisoner. * * * If two or more accomplices are produced as witnesses, they are not deemed to corroborate each other; but the same rule is applied, and the same confirmation is required, as if there were but one." 1 Greenl. Evid., sec. 381.

In *Reg. v. Farler*, 8 C. & P. 106, Lord Abinger, C. B., said: "It is a practice which deserves all the rever-

ence of law, that judges have uniformly told juries that they ought not to pay any respect to the testimony of an accomplice, unless the accomplice is corroborated in some material circumstance. Now, in my opinion, that corroboration ought to consist in some circumstance that affects the identity of the party accused. A man who has been guilty of a crime himself, will always be able to relate the facts of the case, and if the confirmation be only on the truth of that history, without identifying the persons, that is really no corroboration at all. * * * The danger is, that when a man is fixed, and knows that his own guilt is detected, he purchases immunity by falsely accusing others."

On one occasion, a case of great importance, when an accomplice, having sworn positively as to several prisoners, was confirmed as to some, but not as to others, Vaughan, B., advised the jury to acquit the latter; this was done, but those as to whom the accomplice was confirmed were convicted and executed. *Reg. v. Fild*, Berks Spring Assizes, 1828. In another case, Alderson, B., said to the jury: "You may legally convict on the testimony of an accomplice alone, if you can safely rely on his testimony; but I advise jurors never to convict, on the evidence of an accomplice, unless he be confirmed as to the particular person who is charged with the offence." *Reg. v. Wilkes*, 7 C. & P. 272. Shortly after Gurney, B., said: "I think it would be highly dangerous to convict any person of such a crime (larceny) on the evidence of an accomplice, unconfirmed with respect to the person accused." *Reg. v. Dyke*, 8 C. & P. 261.

After quoting from these cases, Wharton remarks: "In the United States, although we have occasionally expressions to the effect that, technically, an accomplice's unsupported testimony will sustain a conviction, the rule is generally adopted, that, when a verdict is rendered exclusively on such testimony, it should be set aside by the court, and that it is the duty of the judge, on trial,

to advise the jury not to convict on the evidence of an accomplice who is uncorroborated as to the essential elements of the case." Whart. Crim. Evid. [9 Ed.] sec. 441.

In the next succeeding section, the learned author, continuing the subject, says: "The corroboration requisite to validate the testimony of an alleged accomplice, should be as to the person of the accused. Any other corroboration would be delusive, since, if corroboration in matters not connecting the accused with the offence were enough, a party who, on the case against him, would have no hope of an escape, could, by his mere oath, transfer to another the conviction hanging over himself." Thereupon, he quotes, with approval, from Roscoe's Criminal Evidence [7 Ed.] 130, where that eminent text writer, after an able discussion of the authorities, and the reasons, says: "There may be many witnesses, therefore, who give testimony which agrees with that of the accomplice, but which, if it does not serve to *identify the accused parties*, is no corroboration of the accomplice; the real danger being that the accomplice should relate the circumstances truly, and at the same time attribute a share in the transaction to an innocent person. It may, indeed, be taken, that it is almost the universal opinion that the testimony of the accomplice should be corroborated as to the person of the prisoner against whom he speaks."

Supporting the same view of the law, another author of distinction says: "Again, notwithstanding some old cases to the contrary, it seems now settled that the corroboration should * * * go to some circumstances affecting the identity of the accused, as participating in the transaction." Best Evid. [Chamberlayne] 171.

Tested by these authorities, the instruction under discussion cannot be held to fully meet legal requirements. It is faulty in at least two particulars: It fails to explain to the jury what is meant by the words,

"*matters material to the issue.*" As to what those matters were, the jury were left to grope in the dark. It fails to tell the jury that in order to the corroboration of the testimony of an accomplice, such corroboration should go so far as to identify the person of the prisoner against whom the accomplice speaks. And, speaking for myself, alone, I believe that the jury should be flatly instructed not to convict the accused on the uncorroborated testimony of an accomplice. This position is supported by abundant authority. Wharton observes: "Where there is corroboration as to a part only of the defendants, the latter practice, as is elsewhere seen more fully, is to direct an acquittal of the defendant to whom the corroboration does not extend." Whart. Crim. Evid., sec. 442.

On the point of the admission of an accomplice to testify, Chitty aptly says: "The law confesses its weakness by calling in the assistance of those by whom it has been broken. It offers a premium to treachery, and destroys the last virtue which clings to the degraded transgressor. Still, on the other hand, it tends to prevent any extensive agreement among atrocious criminals, makes them perpetually suspicious of each other, and prevents the hopelessness of mercy from rendering them desperate." 1 Chitty Crim. Law, 769.

Whatever of probative force the testimony of an accomplice ordinarily ought to have, is greatly weakened by the testimony of Cong Seng, in this particular instance, by his numerous evasions, contradictions, and by the physical facts immediately attendant on the murder. If in any case a jury ought to be directed to acquit, except the testimony of the accomplice be corroborated, touching the guilt of the defendant on trial, this is a case where such direction should be given.

In passing by, *sub silentio*, numerous other errors assigned, we are not to be regarded as giving either

sanction or disapproval to any other points than those specially noticed, several of them, however, are absolutely frivolous.

The judgment is reversed and the cause remanded. All concur, but Norton, C. J., who concurs on the first point, but dissents as to the others.